Jeffrey BLY, Petitioner,

v.

David NOLAN, Respondent.

**Civil Action No. 06–11204–NMG.**

United States District Court,
D. Massachusetts.

Oct. 3, 2008.

Dana A. Curhan, Boston, MA, for Petitioner.

Susanne G. Reardon, Office of the Attorney General, Boston, MA, for Respondent.

## MEMORANDUM & ORDER

GORTON, District Judge.

The petitioner in this case, Jeffrey Bly ("Bly"), is currently serving a life sentence in a Massachusetts correctional facility and has filed a petition for habeas corpus. After consideration of his petition, Magistrate Judge Marianne Bowler filed a Report and Recommendation in response to which Bly has entered objections. This Court now addresses those objections.

### I. *Background*

Bly was convicted of murder arising from an incident that took place on September 13, 1993, in Dorchester, Massachusetts. Bly became involved in a dispute over a bicycle with an acquaintance named Lee Simmons ("Simmons"). That dispute quickly escalated to include several other young men and at least two handguns. Simmons was shot and killed by a .38 caliber bullet to his head. The handgun that killed Simmons was recovered by the police from the attic of the house located at 770 Morton Street, in which Bly's friend, Comilus Earl Pope ("Pope"), resided. Bly had run into that house during the gunfight and the recovered handgun bore his fingerprints.

Bly stood trial in the Suffolk County Superior Court beginning on April 5, 2000, on charges of first degree murder, armed assault with intent to murder, unlawful possession of a firearm and unlawful possession of ammunition. Bly opted to testify at his trial. Part of his testimony on direct examination revealed the fact that

at the time of his trial Bly was already serving a life sentence for an unrelated murder. The prosecution cross-examined him at length about that conviction, evoking the fact that the victim in that murder was an assistant district attorney who had been prosecuting Bly on other charges and that Bly claimed to be innocent of that offense despite his conviction. Bly's defense counsel did not object to the prosecution's line of questioning.

Bly was convicted of first degree murder and unlawful possession of a firearm and ammunition. The trial court sentenced him to a term of life imprisonment on the murder count and to 54 to 60 months on the court for unlawful possession, to be served concurrently.

## A. Procedural History

Bly faults his trial attorney for failing a) to file a motion in limine to preclude impeachment by his prior conviction and b) to object to the scope and duration of the prosecution's cross-examination on that subject. On March 28, 2002, Bly filed a motion for a new trial, which was denied by a different judge than had presided over the trial. Bly also appealed to the Massachusetts Supreme Judicial Court ("the SJC"), which affirmed the judgment of the Superior Court in July, 2005.

In July, 2006, Bly filed a petition for habeas corpus. Respondent David Nolan, the Superintendent at Cedar Junction where Bly is currently incarcerated, entered a timely response to the petition and a motion to dismiss it. In January, 2007, this matter was referred to Magistrate Judge Bowler, who issued a final Report and Recommendation ("the R & R") on March 31, 2008. On April 1, 2008, Bly filed objections to the R & R.

## B. Magistrate Judge Bowler's R & R

In the R & R, the Magistrate Judge examined this matter under the standard of review set out in Section 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). That statute allows a federal court to grant habeas relief only where a state court adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2).

The issue before the Magistrate Judge in this habeas petition was whether Bly was deprived of the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. Therefore, she applied the test set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which provides that a petitioner must show the following: 1) "that counsel's performance was deficient" and 2) "that the deficient performance prejudiced the defense". The element of deficiency requires that

> counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment ... [i.e.] that counsel's representation fell below an objective standard of reasonableness.

*Id.* at 687–88, 104 S.Ct. 2052. The element of prejudice requires that "counsel's errors were so serious as to deprive [petitioner] of a fair trial", or, in other words, that there is a reasonable probability that but for counsel's unprofessional conduct the outcome would have been different. *Id.*

Applying this test, the Magistrate Judge agreed with the reasoning of the SJC's denial of Bly's motion for a new trial. She

acknowledged that the trial strategy of Bly's counsel was to blame Pope for the death of Simmons and to discredit the two main prosecution witnesses, Pope's aunt and girlfriend. They, presumably, were trying to protect Pope and scapegoat Bly because he was already serving a life sentence with the rationalization that an additional murder conviction would cause Bly no harm. That strategy would have required Bly's counsel to question him about the length and nature of his prior conviction.

The Magistrate Judge determined that, although it was probably error for Bly's counsel not to object to the prosecution's cross-examination about the details of Bly's prior conviction, there was no miscarriage of justice, especially in light of the limiting instruction given by the trial judge regarding the prior conviction. As proof of her determination, the Magistrate Judge pointed out that the case against Bly was strong: he was identified by an eyewitness as the shooter, two eyewitnesses saw him leaving the scene of the shooting carrying a handgun just moments after the shooting occurred, there was some evidence that Bly had admitted to firing shots and the physical and forensic evidence implicated him. Moreover, the Magistrate Judge noted that the jury acquitted Bly of assault with intent to murder, suggesting that it had not been improperly prejudiced by Bly's prior conviction.

Therefore, the R & R concluded that Bly failed to satisfy either prong of the *Strickland* test. Accordingly, the Magistrate Judge recommends that the motion to dismiss the petition for habeas corpus be allowed.

### C. The Petitioner's Objections to the R & R

Bly responds that even if his counsel's defense strategy was to portray Bly as the ideal person to blame for Simmons's murder, a few direct questions about his life sentence and his prior murder conviction would have sufficed. Bly argues that there was no reason to allow the prosecution to question him, as it did, about the identity of the prior victim, the details of that conviction or his guilt. According to Bly, the prosecution's cross-examination was extraneous and calculated to inflame the jury.

Moreover, Bly contends that the trial judge's curative instruction was ineffective. Although the judge instructed the jury to consider Bly's prior murder conviction only in determining his credibility and to disregard the identity of the victim, he did not instruct the jury to disregard the associated details. Moreover, the trial judge also told the jurors that they had heard some evidence of "crimes which [Bly] acknowledges having *committed*", even though at trial Bly had specifically acknowledged his prior conviction but denied having committed the underlying crime. Bly contends that the instruction suggested to the jury that the judge had information contradictory to Bly's testimony. Bly also claims that the improper questioning of him was so inflammatory that the jurors could not disregard it, whether instructed to or not.

Therefore, Bly asserts that he has satisfied both prongs of the *Strickland* test, thus warranting the allowance of his habeas petition.

## II. *Analysis*

### A. Legal Standard Applied

In the R & R, the Magistrate Judge correctly applied the standard of review set out in § 2254 of the AEDPA. Section 2254 applies only to *federal* claims that are "adjudicated on the merits". If the SJC had examined only state law in Bly's appeal, *de novo* review rather than the

§ 2254 standard would apply to this Court's analysis.

In fact, the SJC reviewed Bly's claim of ineffective assistance of counsel under the Massachusetts standard set out in M.G.L. c. 278, § 33E ("substantial likelihood of a miscarriage of justice"). *Commonwealth v. Bly*, 444 Mass. 640, 830 N.E.2d 1048, 1055 (2005). But, because that state standard is more favorable to a petitioner than the federal *Strickland* standard, federal law adjudication is presumed to be subsumed within the state law adjudication. If Bly failed to satisfy the more favorable state standard, a *fortiori*, he failed the federal standard. *See McCambridge v. Hall*, 303 F.3d 24, 35 (1st Cir.2002); *see also Knight v. Spencer*, 447 F.3d 6, 10 (1st Cir.2006). Therefore, for the purposes of § 2254, Bly is contesting a federal claim that was adjudicated on the merits and the standard of review under § 2254 may apply. *See id.*

### B. *Strickland* Prong #1: Deficiency of Counsel

 As explained in the R & R, it is well established that the bar for proving that counsel was so deficient as to be ineffective under the *Strickland* standard is very high. That fact is particularly true in cases where the petitioner proceeds, as does Bly, on a theory that counsel wrongfully failed to object, which involves an inherently tactical decision. An attorney may opt not to object for a myriad of valid strategic reasons, such as to avoid emphasizing the damaging testimony in the eyes of the jury. *See Commonwealth v. Gomes*, 443 Mass. 502, 822 N.E.2d 720, 725 (2005). Thus, Bly's counsel may not have objected to the prosecution's cross-examination related to Bly's prior convictions so as not to draw unnecessary attention to it. Although that reasoning was not mentioned in the R & R, the general analysis that Bly failed to prove that his counsel was ineffective is correct.

Bly complains that the Magistrate Judge ignored his counsel's failure to object to the prosecution's investigation into the specifics of Bly's prior murder conviction. He validly argues that such a failure was not likely part of counsel's strategy of portraying Bly as blameworthy for Simmons's murder. No more than a cursory description of Bly's prior murder conviction and resulting life sentence was necessary for that strategy. Bly's counsel may, however, have had other reasons for not objecting to the questioning, as described above. Thus, it cannot be said that his counsel was "deficient" within the meaning of *Strickland*.

### C. *Strickland* Prong #2: Prejudice to the Petitioner

 The conclusion reached by the Magistrate Judge in her R & R that Bly was not prejudiced by his counsel's errors is convincing. Although, as Bly points out in his objections, the trial judge's curative instruction may not have been as effective as described in the R & R, the Magistrate Judge correctly notes that Bly's chance of acquittal was low given the weight of the evidence against him. Moreover, as the Magistrate Judge points out, the fact that Bly was acquitted on one count (armed assault with intent to murder) offers strong support for the conclusion that the jury was not unfairly influenced by counsel's actions (or inaction) at trial. *See Commonwealth v. Granquist*, 60 Mass. App.Ct. 1103, 2003 WL 22741580, at *3 (Mass.App.Ct.2003).

### ORDER

In accordance with the foregoing, the Report and Recommendation (Docket No. 20) is accepted and adopted.

**So ordered.**